UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | 21-CR-10250-NMG |
| ) | |
| (2) MOHAMMED DIAB; and ) | |
| (3) AMY ROUNTREE, ) | |
| ) | |
| Defendants.   ) | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

Defendant Mohammed Diab was an important part of Allied Wallet's scheme to defraud banks. Diab knew about and helped to execute the scheme's mechanics—disguising high-risk merchants as low-risk merchants to get transactions approved, and to secure the movement of customers' funds from issuing banks on to acquiring banks and on to the high-risk merchants themselves. Diab taught merchants the "how" of the scheme; he enabled Allied Wallet and its owner to make significant profits; and he helped to cover up the scheme when regulators and the grand jury came calling. For these reasons, he is worthy of the felony conspiracy charge in the Superseding Indictment and the conviction that will follow from it.

What the investigation of Diab's fraudulent conduct revealed, however, is somewhat atypical. Allied Wallet clearly deceived the banks at every turn, and its scheme put the banks at risk of harm for engaging in transactions that they would have rejected had they known the truth. But the banks suffered no pecuniary harm. They instead profited through their share of the processing fee deducted from each transaction. Allied Wallet's owner and others who recruited merchants to the scheme also profited on a transaction-by-transaction basis. Diab and his co-defendant Amy Rountree, however, did not. These factors—the lack of pecuniary harm to the

bank victims (in fact its opposite) and the lack of transaction-based gains to Diab—distinguish his offense from the heartland of financial frauds.

The Presentence Investigation Report correctly calculates Diab's Guidelines Sentencing Range at 15 to 21 months at Criminal History Category I. The government respectfully submits, however, that under the unique circumstances of this defendant in this case, the Court should vary its sentence modestly to the one outlined in the parties' plea agreement. That is a sentence of time served, a 12-month term of supervised release (as modified by agreement of the parties and described immediately below); the required $100 special assessment; and an immediately payable mid-Guidelines fine of $15,000.

Since Diab entered his plea, and after the Court expressed an intent to reject the parties' agreement, the parties have modified their plea agreement. The government intends the modification—one that adds a three to six-month term of home confinement to the agreed-upon disposition—to further distinguish Diab's conduct from that of his less culpable co-defendant, Amy Rountree, while still acknowledging that Diab is less culpable than others who profited directly from the scheme, including his co-defendant Andy Khawaja.

For the reasons set forth below and others to be offered at the sentencing hearing, the United States respectfully requests that the Court accept Diab's offered plea and impose the requested sentence.

I.   <u>Calculation of the Advisory Sentencing Guidelines</u>

As previewed for the Court at the plea hearing and outlined in the plea agreement, the parties calculate Diab's total offense level under the Sentencing Guidelines to be 14 based on the following:

- a base offense level of 7, because Diab's offense of conviction is referenced to USSG § 2B1.1 and has a statutory maximum term of imprisonment of 20 years

- or more (USSG § 2B1.1(a)(1)) (PSR ¶ 37);

- Diab's offense level is increased by 5, because defendant's offense involved sophisticated means, and Diab intentionally engaged in or caused the conduct constituting sophisticated means (USSG § 2B1.1(b)(10)(C)) (PSR ¶ 37);

- Diab's offense level is increased by 3, because Diab was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, including by recruiting at least one merchant to the scheme and directing his co-defendant Rountree (USSG § 3B1.1(c)) (PSR ¶ 40);

- Defendant's offense level is increased by 2, because he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct or a closely related offense (PSR ¶ 41); and

- Defendant's offense level is decreased by 3, because defendant has accepted responsibility for his crime (USSG § 3E1.1) (PSR ¶¶ 44-45).

Diab's Total Offense Level is accordingly 14. (PSR ¶ 47). He has no prior convictions. (PSR ¶¶ 49-51). Diab's advisory Guidelines Sentencing Range is 15 to 21 months. (PSR ¶ 86).

II.  The Requested Sentence

Given the unique facts of this case, a sentence of time served and one year of supervised release—with the condition that three to six months of that term be served on home confinement—is appropriate, especially in consideration of the nature and seriousness of his offense, the need to promote respect for the law, provide just punishment, and afford adequate deterrence, in accordance with 18 U.S.C. § 3553(a).

As noted above, Diab's misconduct was serious and merits the felony conviction to which he has pled guilty. For more than seven years, he helped his employer and others lie to banks so that Allied Wallet's merchant clients could gain access to card payment services provided by the banks, including the provision of money held by those banks to process the merchant's transactions.

3

The government's investigation also revealed no pecuniary harm. To be sure, Allied Wallet's scheme exposed banks to risks that they did not bargain for. Those risks—including the risk of unpaid chargebacks from disputed transactions, significant fines from the credit card companies that straw merchants would not pay (leaving the banks contractually responsible for them), exclusion from the card brand networks, and potential regulatory consequences for unknowingly processing illegal transactions—are what make Diab's lies about the nature of the merchants and transactions material and appropriate for a felony fraud conviction. But the record in this case did not identify any chargeback, fee, fine, or exclusion resulting from the scheme that the banks did not recover from the underlying merchants.

Moreover, while Diab reported an annual salary at Allied Wallet of approximately $55,000 per year (PSR ¶ 75), he did not profit personally from each fraudulent payment card transaction, in contrast to the owner of Allied Wallet, defendant Andy Khawaja, or co-defendant Thomas Wells, who shared in profits to merchants that he recruited. Nor did Diab conceive of the fraud. He is more culpable than Rountree, but he is less culpable than his cousin Khawaja and Wells—each of whom was a payment card industry veteran.

Diab has no prior convictions. Like his co-conspirator Rountree, he no longer works in the payment card industry. His resolution with the Federal Trade Commission, which included a $1 million civil judgment, in fact bans him from it. Diab instead works for the family's towing business—facts that significantly decrease the likelihood that he will re-offend. (PSR ¶¶ 72-73). Finally, although Diab's conduct of his business affairs was clearly criminal, there are several aspects to his personal story—including the circumstances of his arrival in the United States from Lebanon and his evident commitment to his family and extended family—that seem worthy of the Court's consideration and favor the modest variance the parties request.

For all of these reasons, the government thus requests that the Court accept the parties' plea agreement pursuant to Rule 11(c)(1)(C) and impose a sentence of time served and one year of supervised release—a condition of which is that the defendant serve at least three and up to 6 months of home confinement in the Court's discretion, consistent with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

| | |
|---|---|
| JOSHUA S. LEVY<br>United States Attorney<br>District of Massachusetts | GLENN S. LEON<br>Chief, Fraud Section<br>Criminal Division, U.S. Department of Justice |
| By: */s/Seth B. Kosto*<br>SETH B. KOSTO<br>Assistant United States Attorney | By: */s/Randall Warden*<br>RANDALL WARDEN<br>Trial Attorney |

MARGARET A. MOESER
Chief, Money Laundering & Asset Recovery Section
Criminal Division
U.S. Department of Justice

By:   */s/Elizabeth Carr*
      Elizabeth Carr
      Trial Attorney

December 18, 2024

CERTIFICATE OF SERVICE

I certify that this document was filed on the date listed below through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

                                       */s/ Seth B. Kosto*
                                       SETH B. KOSTO
                                       Assistant United States Attorney

Dated:  December 18, 2024