United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 21-10250-NMG-2 |
| Mohammed Diab, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM & ORDER

GORTON, J.

Pending before the Court is defendant's motion for the
recusal of the judicial officer assigned to this case, pursuant
to 28 U.S.C. § 455(a) (Docket No. 276). For the reasons that
follow, the motion will be allowed.

I.   **Background**

Mohammed Diab ("Diab" or "defendant") was the Chief
Operating Officer for Allied Wallet, Inc. ("Allied Wallet"), a
California-based payment processing company that served
merchants doing business over the internet.

In September, 2023, a grand jury returned a superseding
indictment charging Diab and three co-conspirators, all of whom
were associated with Allied Wallet, with conspiracy to commit
bank and wire fraud, in violation of 18 U.S.C. § 1349. The
indictment alleged that defendant and his co-conspirators
fraudulently induced major payment card "networks" to provide

-1-

transaction services to Allied Wallet's merchant clients, many
of which had been banned or restricted from use of those
networks.  Diab and his co-conspirators facilitated the access
of their clients to those networks by misrepresenting the
identities of the merchants or the nature of their transactions.
In total, the government alleges that the defendants
fraudulently caused banks to process more than $150 million in
transactions.

In August, 2024, Diab filed a motion for a Rule 11 hearing.
The parties entered into a binding plea agreement pursuant to
Fed. R. Crim. P. 11(c)(1)(C) (a "C" plea).  Among other terms,
the parties agreed that defendant's total offense level under
the guidelines is 14 and agreed on a sentence of time served
followed by a one-year term of supervised release.  Pursuant to
Fed. R. Crim. P. 11(c)(3)(A), the Court deferred acceptance of
the plea agreement until sentencing, which was scheduled for
December, 2024.

In November, 2024, the presiding judge of this session
notified the parties that, with the information currently
available to him, he was inclined to reject the plea agreement
absent further justification for the proposed below-guideline
sentence.  The parties were directed to file memoranda in
support of the proposed sentence.  They did so, arguing, <u>inter
alia</u>, that the lack of pecuniary loss to the victims justified

-2-

the time-served sentence.  After consideration of the memoranda, the Court issued a second notice stating that it would defer final ruling on the plea until after it had received and reviewed the PSR.

In December, 2024, one day before defendant's scheduled sentencing hearing, the parties submitted an amended "C" plea which included a term of home confinement of between three and six months.  At the sentencing hearing the following day, the Court rejected the revised "C" plea, explained that a non-incarcerative sentence would not be acceptable and directed the parties to decide whether they would submit a revised plea agreement, proceed with sentencing without a plea agreement or proceed to trial.  The parties thereafter informed the Court that further plea negotiations were unsuccessful and requested a trial date be set.

Defendant thereafter filed the instant motion, arguing that the presiding judge must recuse himself pursuant to 28 U.S.C. §455(a) due to, inter alia his improper participation in plea negotiations.

II.  **Legal Standard**

Section 455(a) of Title 28 provides, in relevant part, that

[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The inquiry is objective, asking if a reasonable member of the public, "fully informed of all the relevant facts, would fairly question the trial judge's impartiality." In re United States, 158 F.3d 26, 31 (1st Cir. 1998). Although judges are given wide latitude in assessing whether recusal is necessary, United States v. Giorgi, 840 F.2d 1022, 1034 (1st Cir. 1988), the First Circuit Court of Appeals ("the First Circuit") has cautioned judges to err on the side of recusal where there is any reasonable doubt as to their impartiality. In re United States, 441 F.3d 44, 56 (1st Cir. 2006).

One of several rules imposed on federal judges designed, in part, to preserve impartiality is the prohibition of judicial participation in plea discussions, pursuant to Fed. R. Crim. P. 11(c)(1). United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006) (noting that two goals of Rule 11(c)(1) are "[to] protect[] against unfairness and partiality in the judicial process [and to] eliminate[] the misleading impression that the judge is an advocate of the agreement rather than a neutral arbiter"); United States v. Parra-Ibanez, 936 F.2d 588, 593 (1st Cir. 1991) (declaring that the purpose of Rule 11 as a whole is to "protect not only the parties, but also the fairness, integrity and public reputation of judicial proceedings").

A judge improperly participates in plea bargaining when he or she "comments on or mandates what it perceives to be an

-4-

appropriate penalty for a defendant." <u>United States</u> v. <u>Bierd</u>,
217 F.3d 15, 20 (1st Cir. 2000) (cleaned up).  A judge's
participation in the plea-bargaining process may or may not have
an actual effect on his or her impartiality, <u>Damiano</u> v. <u>Gaughan</u>,
592 F. Supp. 1222, 1225 (D. Mass. 1984), but it may likely
affect at least the <u>appearance</u> of impartiality. <u>United States</u> v.
<u>Castro</u>, 736 F.3d 1308, 1316 (11th Cir. 2013) (Martin, J.,
concurring); <u>see also</u> <u>United States</u> v. <u>Mendoza</u>, 20 Fed. App'x
730, 732 (9th Cir. 2001) ("[W]hen a judge . . . becomes involved
in the plea negotiation, he may no longer be perceived as a
neutral arbiter, and the defendant may believe that [he] would
not be able to receive a fair trial before that judge.");
<u>Mercado Cruz</u> v. <u>United States</u>, No. 16-1789CCC, 2019 WL 4935399,
at *5 (D.P.R. Sept. 30, 2019) (concluding that the district
judge had "undermined the Court's appearance of neutrality and
impartiality" by participating in plea negotiations).

## III. <u>Analysis</u>

Defendant takes issue with several actions of the presiding
judge in the course of reviewing and rejecting the parties' plea
agreement.  In addition to the allegations of judicial
participation in plea bargaining, defendant argues that there
are independent bases for recusal under §455(a), namely that 1)
the Court indicated its intention to reject the "C" plea before
it could review the PSR, 2) the Court "accused Mr. Diab of

wrongdoing nowhere alleged in the indictment" and 3) the Court treated Diab more harshly than a similarly situated co-defendant.

The Court first addresses the independent bases for recusal before evaluating the alleged violation of Fed. R. Crim. P. 11.

### a. Independent Bases for Recusal

First, defendant takes issue with the fact that the court stated that its intention was based on the sentencing factors enumerated in 18 U.S.C. §3553(a). He insists an evaluation of all sentencing factors listed under §3553(a) was not possible given that, without the presentence report, the Court did not have complete information regarding defendant's history and characteristics.

The Court disagrees. The Court's notice made clear that its evaluation of the proposed sentence 1) was based on the information presently before it and 2) was not final until it had received additional information from the parties. Furthermore, the Court had already been informed of important aspects of defendant's history and characteristics, namely, his compliance with conditions of release and his lack of a criminal history. The parties were expressly directed to provide the Court with further facts to inform its final decision, yet the parties highlighted no compelling aspects of defendant's history

or characteristics beyond those of which the Court was already
aware.

Second, defendant asserts that the Court made incorrect
factual findings on the record which demonstrate bias.  Again,
the Court disagrees but whether or not its findings were
erroneous is not an adequate basis for recusal.  Rather, factual
mistakes in determining a defendant's sentence may serve as a
valid basis for appeal. In re Martinez-Catala, 129 F.3d 213, 219
("Judges constantly form personal opinions during proceedings. .
. . Inaccurate findings based on those opinions may lead to
reversal on appeal but not to recusal."); In re Cooper, 821 F.2d
833, 841 (1st Cir. 1987) ("[T]he mere fact that a judge errs or
makes clearly erroneous findings would not be indicative of
bias.").

Finally, Defendant suggests that the Court's disparate
treatment of co-defendant Amy Roundtree ("Roundtree") suggests
an unfair bias against defendant. In doing so, however,
defendant emphasizes only the co-defendants' similarities and
ignores their differences.  Importantly, the parties agreed that
Roundtree's total offense level was 8, as compared to Diab's 14.
That disparity in total offense level reflects not only a
distinction in their roles at Allied Wallet, but also the
parties' agreement that, of the two, only Diab was deserving of
a 3-level enhancement for obstruction of justice.

-7-

### b. Participation in Plea Negotiations

With respect to defendant's allegations of judicial participation in plea bargaining, he first criticizes the presiding judge's initial notice to counsel that the judge was inclined to reject the "C" plea. In that notice, the Court explained that his potential rejection was based on a lack of compelling circumstances justifying a proposed sentence well below the low end of defendant's guideline range.[1]

Defendant asserts that the Court's notice constituted

> an unmistakable nudge for the parties to revise the
> agreement to please the court [which] . . . sparked plea
> negotiations that would not have otherwise occurred.

Not so. The notice and the directive to the parties contained therein was clear: the Court sought an explanation for such a sizeable proposed downward departure. This was not a "nudge" to do anything other than to file sentencing memoranda in sufficient time for the Court to consider thoroughly the propriety of the plea prior to sentencing. The notice clearly and unequivocally sought information with respect to the existing agreement, not a new agreement.

Next, defendant highlights comments made by the presiding judge at the December 19, 2024, hearing, which defendant argues

---

[1] Based on the parties' agreed total offense level of 14 and an assumed criminal history level of I, the Court calculated defendant's likely guideline sentencing range at 15 to 21 months' imprisonment.

"crossed Rule 11's bright line" by outlining a hypothetical plea that the Court would find acceptable.

At the hearing, this Court rejected the "C" plea and its proposed time-served sentence, then stated:

> [T]he Court would accept an agreed-upon sentence substantially below the low end of the applicable guideline range but not a sentence without at least a number of months of incarceration, followed by some period of home confinement.

In the context of a "C" Plea, there is an inherent tension between the court's responsibilities both to inform the defendant that his plea is rejected and to avoid engaging in plea negotiations. See United States v. Scott, 877 F.3d 42, 48 (1st Cir. 2017). United States District Judge William G. Young describes the delicate balance a court must strike in its explanation for rejecting a "C" plea as follows:

> Under a "C" plea, the judge's choice at sentencing is limited to imposing the sentence agreed between the government and the offender or rejecting the plea altogether. . . . The judge, of course, is forbidden from engaging in the plea bargaining itself. . . . These two requirements conflict whenever a court is inclined to reject a "C" plea since an unexplained rejection smacks of personal fiat and any explanation sounds like court interference in the parties' good faith bargaining.

United States v. Aegerion Pharm., Inc., 280 F. Supp.3d 217, 218 (D. Mass. 2017).

The First Circuit in Scott suggests when a court may cross the line from justifying a plea rejection into inserting itself into plea negotiations. In that case, the defendant argued that

the court improperly participated in plea bargaining by
rejecting a proposed six-month sentence and notifying the
parties that "anything less than a twelve-month sentence [would]
be insufficient." 877 F.3d at 48.  Although the First Circuit
determined that the comments survived plain error review, the
court also noted that a safer course of action may have been for
the presiding judge to

> simply explain[] that it rejected the agreement because the
> six-month duration of the consecutive portion of the
> sentence was too lenient.

Id.

After careful consideration, this Court finds that its
comments regretably did overstep the bounds of Rule 11's
prohibition on judicial participation in plea negotiations.  As
in Scott, it would have been appropriate for the Court to state
that a proposed sentence without a term of incarceration was too
lenient but the Court's gratuitous comment that an acceptable
plea would include "some months" of incarceration was
unnecessarily descriptive.  Those comments improperly
"suggest[ed] what will satisfy the court" in terms of an
adequate sentence, i.e., at least two or more months of
incarceration. United States v. Kraus, 137 F.3d 447, 455 (7th
Cir. 1998) (citing United States v. Crowell, 60 F.3d 199, 204
(5th Cir. 1995)).

Recusal of the presiding judge is therefore warranted to maintain the integrity of the judicial process in this case.

### ORDER

For the reasons set forth above, defendant's motion for recusal (Docket No. 276) is **ALLOWED**.  The case is hereby returned to the Clerk of the Court for reassignment.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated:  April 23, 2025