UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * Criminal Action No. 21-cr-10250-ADB |
| | * |
| MOHAMMED "MOE" DIAB, | * |
| | * |
| Defendant. | * |

# MEMORANDUM AND ORDER

BURROUGHS, D.J.

Currently before the Court is Defendant Mohammed Diab's motion to dismiss the indictment currently pending against him under the Fifth Amendment's Double Jeopardy Clause. [ECF No. 340]. For the reasons set forth below, the motion is **GRANTED**.

I.     BACKGROUND

On August 25, 2021, a federal grand jury indicted Diab and others for conspiring to commit wire fraud and bank fraud.  [ECF No. 1].  The operative superseding indictment alleges that Diab and others, who together ran Allied Wallet, a California-based payment processing company, caused banks to process more than $150 million in payment card transactions for high-risk merchants by misrepresenting the identities of the merchants and the nature of the underlying transactions.  [ECF No. 150].

In August 2024, Diab agreed to plead guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in exchange for a sentence of time served followed by a one-year term of supervised release, a fine of $15,000, and a mandatory special assessment of $100.  [ECF No. 224].  On November 8, 2024, the judge then assigned to the case notified the parties of his intention to reject the plea agreement, stating that "a time served sentence is insufficient to achieve the goals of sentencing."  [ECF No. 242].  The parties submitted a proposed revised plea agreement, which that same judge again rejected.  [ECF No. 257].  Thereafter, on January 27, 2025, Diab filed a motion for recusal, [ECF No. 276], which was granted on April 23, 2025, [ECF No. 292], and the case was reassigned to Judge Young, [ECF No. 293].

The case proceeded to trial on Tuesday, September 9, 2025, [ECF No. 326], and the Court told jurors that it expected that trial "probably won't take more than 10 [half-]days, but those days will be spread out over three weeks," [ECF No. 362 at 18]; see also [ECF No. 306 at 3–4 (stating parties' expectation that government's case would last "more than five [half-]days," with "perhaps an additional 2 [half-]days for the defense")].  The Court did not resolve pending pretrial motions before trial, [ECF No. 306 at 5], preferring to rule on them from the bench as the trial unfolded, see, e.g., [ECF No. 363 at 76–77].

On Tuesday, September 16, 2025, after five half-days of trial—the jury did not sit on September 12, 2025—court adjourned, and was set to resume on Thursday, September 18, 2025. [ECF No. 336]. On Wednesday, September 17, 2025, the Court cancelled the trial days for Thursday and Friday, [ECF No. 338], informing the parties that the judge had had a family emergency come up and was hopeful that trial would resume on the following Monday, September 22, 2025, [ECF No. 369-2 at 2]; on Friday, September 19, 2025, the Court confirmed that trial would continue on Monday, [ECF No. 369-3 at 2]. On Saturday morning, however, the Court declared a mistrial in a text-only order "[d]ue to a family emergency." [ECF No. 339]. Diab promptly objected to the Court's mistrial declaration and moved to dismiss the indictment, [ECF No. 340], and the government filed a preliminary opposition to the motion, [ECF No. 343]. Judge Young then recused himself, [ECF No. 344], and the case was reassigned to the undersigned judge, [ECF No. 345]. Following two status hearings, [ECF Nos. 348, 354],[1] Diab filed a supplemental memorandum in support of his motion to dismiss, [ECF No. 369], which the government opposed, [ECF No. 370], and Diab replied, [ECF No. 371].

## II.    DISCUSSION

Diab argues that the Court's declaration of a mistrial violated his rights to be present, to a public trial, and to the assistance of counsel; he also argues that it violated the Fifth Amendment's Double Jeopardy Clause because it was not occasioned by manifest necessity. [ECF No. 369]. The government counters that there was manifest necessity for the mistrial, and that the mistrial declaration did not violate Diab's rights. [ECF No. 370].

---

[1] At the October 9, 2025, status hearing, the Court said that it was its understanding that Judge Young had a grave family emergency that prevented him from continuing to preside over the trial and that he had concluded, after deliberation and based on his own prior experience, but without consulting the parties, that the case was too complex and too far along to ask another judge to take it up mid-trial. [ECF No. 356 at 7, 9].

The Fifth Amendment's Double Jeopardy Clause provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "[C]ourts have construed the Double Jeopardy Clause to bar retrial of a defendant after a mistrial occurred over the defendant's objection unless the mistrial was occasioned by manifest necessity." United States v. McIntosh, 380 F.3d 548, 553 (1st Cir. 2004) (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824); United States v. Keene, 287 F.3d 229, 234 (1st Cir. 2002)). "The Supreme Court has defined 'manifest necessity' as meaning a 'high degree' of necessity." Read v. Norfolk Cnty. Superior Ct., 133 F.4th 128, 134 (1st Cir.), cert. denied, 145 S. Ct. 1964 (2025); see also McIntosh, 380 F.3d at 553 (calling burden of showing manifest necessity "a heavy one" (citing Arizona v. Washington, 434 U.S. 497, 505 (1978))).

The manifest-necessity inquiry "reduces to whether the district judge's declaration of a mistrial was reasonably necessary under all the circumstances." United States v. Dennison, 73 F.4th 70, 78 (1st Cir. 2023) (quoting Keene, 287 F.3d at 234). In evaluating whether this standard is met, courts "concentrate on three factors: '(1) whether the district court consulted with counsel; (2) whether the court considered alternatives to a mistrial; and (3) whether the court adequately reflected on the circumstances before making a decision.'" Id. (quoting United States v. Garske, 939 F.3d 321, 334 (1st Cir. 2019)). These factors, however, "serve only as a starting point," because "[e]ach case is sui generis and must be assessed on its idiosyncratic facts." Garske, 939 F.3d at 334 (quoting McIntosh, 380 F.3d at 554); see also id. at 329 (noting that manifest necessity standard "cannot 'be applied mechanically or without attention to the particular problem confronting the trial judge'" (quoting Washington, 434 U.S. at 506)). The government bears the burden of showing the existence of manifest necessity. Id. at 329.

4

Here, the government has failed to carry its heavy burden of demonstrating that the Court's declaration of a mistrial was reasonably necessary under all of the circumstances.

As an initial matter, the Court has no doubt that the declaration of a mistrial, while understandably terse, was the product of adequate reflection. The record regarding "the scope and quality of the district court's reflection" is scant, but the Court's initial decision to continue trial for five days before declaring a mistrial demonstrates that this is "patently not a case in which the district court rushed headlong to abort a trial." Dennison, 73 F.4th at 82. This factor thus weighs in favor of finding manifest necessity.

Nevertheless, the Court indisputably did not consult with the parties before declaring a mistrial. As the government concedes, this is "an important factor in the manifest necessity analysis." [ECF No. 370 at 12]; see also Brady v. Samaha, 667 F.2d 224, 229 (1st Cir. 1981) (calling factor "of major importance"); Fed. R. Crim. P. 26.3 (requiring court to permit parties to "comment on the propriety of the [mistrial] order, to state whether that party consents or objects, and to suggest alternatives"). This factor weighs against finding manifest necessity.

Nor does it appear, based on the record, that the Court sufficiently explored alternatives to a mistrial. To be sure, a district court is not required to fully spell out its reasoning or say the magic words "manifest necessity." Washington, 434 U.S. at 516–17; see also Dennison, 73 F.4th at 80 n.5 (holding that district court was not required to "discuss the possibility of ordering a continuance on the record"). The basis for a finding of manifest necessity must, however, be "adequately disclosed by the record." Washington, 434 U.S. at 517; see also Brady, 667 F.2d at 229 ("Whether or not the record indicates [the trial judge] has considered alternatives to a mistrial is significant."); United States v. Pierce, 593 F.2d 415, 419–20 (1st Cir. 1979) (finding "insufficient basis to warrant the drastic remedy of declaring a mistrial" where district court

5

declared mistrial "without first affording counsel an opportunity to be heard, and making a record which adequately disclose[d] the basis of its decision").

Here, whatever alternatives the Court considered and ruled out, it did not do so on the record. See United States v. Toribio-Lugo, 376 F.3d 33, 39 (1st Cir. 2004) (holding that court did not adequately explore alternative where it did not present alternative to the parties nor ascertain their "attitude or wishes with regard to the possibility of a mistrial"). Moreover, based on the trial record, United States v. Bates, 917 F.2d 388, 397 n.12 (9th Cir. 1990) (noting that courts "must look to the record of the trial itself" because "[t]he Constitution does not require the trial judge to consider the alternatives on the record or conduct a hearing"), and without the benefit of further explanation from the Court at the time, it is not obvious that it would have been infeasible to have another judge step in to try the case to completion or hear the parties on the mistrial question. See Fed. R. Crim. P. 25(a) (permitting "[a]ny judge regularly sitting in or assigned to the court . . . [to] complete a jury trial" under certain circumstances); cf. United States v. Ramirez, 884 F.2d 1524, 1530 (1st Cir. 1989) (holding that judge could have "take[n] a recess . . . so that the problem could be researched and discussed with counsel"). It is true that, as the government puts it, "[t]his was no simple 'buy-bust' drug trial," [ECF No. 370 at 10], and it might well have been challenging for another judge to step in mid-trial, see [id. at 10–11]. On the other hand, as Diab puts it, this was a relatively short "one-count, one-defendant conspiracy case," [ECF No. 369 at 24], and it might have been feasible for another judge to complete the trial, [id. at 24–25]. The Court notes that, at the time of the mistrial declaration, the jury expected to sit for another seven days, see [ECF No. 362 at 18], and with only two or three half-days of trial remaining, see [ECF No. 306 at 3–4], there was at least some time for a new judge

to review the docket and trial transcript to come up to speed. Thus, the Court finds that, on balance, this factor also weighs against a finding of manifest necessity.

Considering all the circumstances, and bearing in mind the "high degree of necessity" required to justify a mistrial, Garske, 939 F.3d at 329 (quoting Washington, 343 U.S. at 506), the Court concludes that the government has not demonstrated that the mistrial declaration in this case was manifestly necessary. Accordingly, the Double Jeopardy Clause bars the government from retrying Diab.

This is a difficult decision and a close call. Judge Young is a circumspect and committed jurist. There is no doubt that even amid a personal crisis he reflected carefully on the decision to declare a mistrial. And it is very difficult to fault him for not taking the time to reconvene the parties or even to reach out to colleagues for assistance under the circumstances. But despite his understandable and very human response, the Court concludes that, based on the record currently before it, it would violate Diab's Fifth Amendment right to allow the government to retry him. The Court recognizes that this may be perceived as unfair to the government and the alleged victims of the charged offenses as well as an undeserved windfall for Diab. It is the Court's job, however, to uphold the Constitution and, in this case, in the view of this Court at least, the Constitution requires that the indictment be dismissed.

### III. CONCLUSION

For the reasons set forth above, Diab's motion to dismiss the indictment, [ECF No. 340], is **GRANTED**.

    **SO ORDERED.**

February 4, 2026                                          */s/ Allison D. Burroughs*
                                                                            ALLISON D. BURROUGHS
                                                                            U.S. DISTRICT JUDGE